UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

Monique L. Moorer,

       Plaintiff,

  v.

Always Towing and Recovery, Inc., All City
Recovery, Inc., and Global Lending Services
LLC,

      Defendants.

Case No. 16-cv-1504

---

## BRIEF IN SUPPORT OF DEFENDANT GLOBAL LENDING SERVICES LLC'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

---

Defendant Global Lending Services LLC ("GLS") moves this Court to dismiss all claims (Second through Fifth Claims) asserted by plaintiff against it. The background of this case centers around a Retail Installment Sales Contract that plaintiff entered into for the purchase of a vehicle in which she agreed to make payments in accordance with this contract. The Retail Installment Sales Contract was subsequently assigned to GLS. Plaintiff defaulted on the terms of the contract by failing to make payments as required, and GLS had her vehicle repossessed.

Before a creditor can take possession of motor vehicle collateral in Wisconsin without a court order, it is required to send a Notice of Right to Cure under Wis. Stat. §425.104, and a Notice regarding Repossession under Wis. Stat. §425.205(1g). Plaintiff alleges that the Notice of Right to Cure Default and Notice of Repossession sent by GLS in accordance with the Wisconsin Consumer Act (WCA) before the vehicle was repossessed was somehow ineffective.

Plaintiff's claims are all based on this allegation of improper notice. She asserts in her Second Claim that GLS violated several provisions of the WCA and, therefore, "illegally

repossessed" the vehicle; in her <u>Third Claim</u> that GLS enforced a "right" that it did not have and, therefore, violated the WCA debt collection chapter (Wisconsin Chapter 427), specifically Wis. Stat. § 427.104(1)(j); in her <u>Fourth Claim</u> that GLS took the vehicle without plaintiff's "consent" and without the "lawful right" to do so and, therefore, committed "civil theft" in violation of Wis. Stat. §§ 943.20 and 895.446; and in her <u>Fifth Claim</u> that GLS took and kept plaintiff's car without her "consent" or "lawful authority", and therefore, "converted" plaintiff's vehicle.

The Notice of Right to Cure Default and Notice of Repossession, however, complies with all statutory requirements. As a result, all of Plaintiff's claims must be dismissed.

In addition, GLS's Notice of Right to Cure Default and Notice of Repossession is based squarely on the same notice prepared by the Wisconsin Department of Financial Institutions ("DFI") and shown on its website as a sample form. Such form was prepared pursuant to the regulatory authority granted to the DFI by the WCA. If a creditor acts in conformity with DFI's written interpretation or opinion, Wis. Stat. §426.104(4) provides the creditor with a safe harbor from any penalties. Therefore, none of plaintiff's claims can be sustained on the allegation that the Notice of Right to Cure Default was ineffective and all of the claims asserted against GLS must be dismissed.

In addition to her allegation that the Notice of Right to Cure Default and Notice of Repossession was ineffective, plaintiff also asserts as part of her <u>Third Claim</u> that because of an alleged call to plaintiff's sister and son wherein GLS was looking for plaintiff's vehicle, GLS "engaged in other conduct which can reasonably be expected to threaten, or harass the customer or person related to the customer" and, therefore, violated Wis. Stat. § 427.104(1)(h). Even assuming that such contact occurred as alleged in the Amended Complaint, one call each to

2

plaintiff's relatives cannot, as a matter of law, be interpreted to be "other conduct" that can "reasonably be expected to threaten, or harass the customer or person related to the customer."

Finally, Plaintiff also asserts as part of her <u>Fifth Claim</u> that GLS "took money" from plaintiff that exceeded the amount to which it was "legally entitled" in order for plaintiff to redeem her vehicle. Wisconsin Consumer Act Stat. § 425.208 permits a lender to demand a certain amount of money from a customer before the customer may redeem a vehicle and reinstate his or her account. Based on the figures alleged by plaintiff, GLS required much less from the plaintiff than the amount it was statutorily authorized to demand in order for her to redeem the vehicle.

Therefore, even assuming the allegations in the Amended Complaint are true, all claims against GLS must be dismissed as a matter of law.

## MOTION TO DISMISS STANDARD

On a Rule 12(b)(6) motion, dismissal is proper where the Amended Complaint "fails to set forth ... facts to state a claim to relief that is plausible on its face." *St. John's United Church of Christ v. City of Chicago,* 502 F.3d 616, 625 (7th Cir. 2007) (internal quotations omitted) (upholding district court's dismissal and applying the pleading standard announced in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544; 127 S. Ct. 1955, 1974 (May 21, 2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.")); *see also Andonissamy v. Hewlett-Packard Co.,* 547 F.3d 841, 847 (7th Cir. 2008). While a court must accept all well-pleaded factual allegations as true, Plaintiff is not entitled to favorable inferences or allegations which are merely conclusions of law asserted in the guise of factual allegations. *Papasan v. Allain,* 478 U.S. 265, 286 (1986). Specifically, "pleadings are not sufficient where the plaintiff rests on 'subjective

3

characterizations' or unsubstantiated conclusions." *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 23 (1st Cir. 1990).

Additionally, while the Court "must view the facts in the light most favorable to" Plaintiff, *Nat'l Fid. Life Ins. Co. v. Karaganis,* 811 F.2d 357, 358 (7th Cir. 1987), "[c]ourts are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly,* 127 S. Ct. at 1965 (citing *Papasan,* 478 U.S. at 286). The standard adopted by *Twombly* requires a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 127 S. Ct. at 1959. "[A] plaintiff armed with nothing more than conclusions" may not "unlock the doors of discovery." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). As a result, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 678

## STATEMENT OF FACTS

The Amended Complaint contains the following allegations relevant to this Motion to Dismiss, which are accepted as true solely for purposes of this Motion:

*Retail Installment Sales Contract.* Plaintiff financed by way of a Retail Installment Sales Contract ("RISC") the purchase of a vehicle on June 7, 2014 from a Milwaukee car dealership. (*Id.* ¶ 9.) Pursuant to the RISC, she agreed to make 48 monthly payments of $439.06, beginning on July 22, 2014. (*Id.*) GLS was subsequently assigned the RISC by the car dealership. (*Id.* ¶ 10.)

Under the RISC, plaintiff gave GLS a security interest in the vehicle she purchased. (Ex. A at 1.)[1] Plaintiff does not allege anywhere in her Amended Complaint that GLS's security

---
[1]  As discussed in more detail below, the RISC is referenced in the Amended Complaint and is central to plaintiff's claims. Therefore, the attachment of the RISC is not a "document
(footnote continued)

interest was invalid.

The RISC defines default as "to have outstanding an amount exceeding one full payment which has remained unpaid for more than 10 days after the due dates . . . ." (Ex. A at 2.) Upon default, GLS has the right to repossess the vehicle after giving a notice regarding repossession pursuant to Wis. Stat. § 425.205(1g). (*Id.*)

*Non-Payments Leading to Plaintiff's Default of the RISC.* Plaintiff made regular monthly payments through April 2015. (*Id.* ¶ 16.) However, plaintiff failed to make any payment in May 2015 and, on June 27, 2015 and June 30, 2015, plaintiff made payments only of $160.00 and $150.00, respectively. (*Id.* ¶¶ 16, 22.) In July 2015, she again made no payments. (*See id.* ¶¶ 22-30.) In other words, between May and July 2015, plaintiff paid only a total of $310 when, according to her RISC, she owed $1,317.18 (an amount equal to three monthly payments of $439.06 under the RISC). (*Id.*)

Plaintiff does not allege in the Amended Complaint that, before May 2015 (or at any other point) that she made any "extra" or "prepayments" on the account. Therefore, as of August 3rd – more than 10 days after her payment due date, plaintiff's delinquency of $1,007.18 exceeded more than one full payment. (*Id.* ¶¶ 16, 22-30.) On August 4, 2015, plaintiff made a payment to GLS in the amount of $150.00. (*Id.* ¶ 25.) Although this reduced plaintiff's delinquency to $857.18, she was still behind by more than one full month's payment for more than ten days after her payment due date. (*Id.* ¶¶ 16, 22-30.) As a result, on August 6, 2015, Plaintiff was in default under the contractual terms of the RISC and as defined by WCA Wis. Stat. § 425.103(2)(a). (Ex. A at 2.)

*The Notice of Right to Cure and Notice of Repossession of Motor Vehicle.* On August 6,

_____

outside the pleadings" and can be reviewed by this Court without converting this Motion into a motion for summary judgment.

2015, GLS sent plaintiff by certified mail a Notice of Right to Cure and Notice of Repossession of Motor Vehicle (the "Notice"). (*Id.* ¶ 27; *see also* Exhibit B, attached to this brief.[2]) The Notice contained the information required by Wis. Stat. § 425.104(2), including as pertinent to this case, a statement of the total payment due and owing and the separate itemized total for the late charges owed by plaintiff. In accordance with the provisions of Wis. Stat. §425.105, the Notice gave plaintiff 15 days – or until August 24, 2015 – to cure her default. (Exhibit B.)

The Notice further stated, in compliance with Wis. Stat. § 425.205(1g):

> "If you do not cure the default on or before LAST DAY FOR PAYMENT (see above) [August 24, 2015], we may have the right to take possession of the motor vehicle that secures the credit transaction, or is subject to the lease, without further notice or court proceeding.
>
> If you believe you are not in default, or you object to us taking possession of your Vehicle, you may notify us in writing, no later than 15 days from the date of this notice, and demand that we proceed in court. If we proceed in court, you may be required to pay court cost and attorneys' fees.

Plaintiff alleges that she did not receive the Notice. (Am. Compl. ¶ 27.) (As shown below, the statute presumes the notice is given to the customer if it is be sent by certified mail.)

*Payments Made After the Notice of Right to Cure and Notice of Repossession of Motor Vehicle was Given to Plaintiff.* Although plaintiff claims that she made a payment on August 19, 2015 in the amount of $175.00, plaintiff failed to pay the amount necessary to cure her default by the cure expiration date of August 24, 2015 . (*See id.* ¶ 26-30.)

Plaintiff made an additional payment of $250.00 in September (on September 14, 2015) admittedly "trying to get caught up on her car payments." (*Id.* ¶ 30.) In October, plaintiff made another payment of $300.00 (on October 5, 2015). (*Id.* ¶ 33.) On November 10, 2015 at 11:32

---

[2] See footnote 1 and discussion below regarding the inclusion of this Notice without converting the Motion to a motion for summary judgment.

a.m. CST, plaintiff made a payment of $525.00.  (*Id.* ¶¶ 39-40.)

*Summary of Amounts Due and Owing and Payments Made by Plaintiff since First Admitted Missed Payment in May 2015 Until Repossession.*  Based on plaintiff's allegations, before the repossession on November 10, 2015, the following monthly payments came due and the following payments were applied to plaintiff's account:

| Dates | Amounts Due & Owing Pursuant to RISC | Amounts Paid During Month of Payment Due Date | Amounts Due & Owing Minus Amounts Paid That Month | Cumulative Arrearage |
|---|---|---|---|---|
| July 22, 2014-April 22, 2015 (Am. Am. Compl. ¶¶ 10, 13.) | $439.06 per month (*Id.* ¶ 10.) | Paid as Agreed each Month (*Id.* ¶ 13.) | $0 (*Id.*) | $0 (*Id.*) |
| May 22, 2015 (*Id.* ¶¶ 10,16.) | $439.06 (*Id.* ¶ 10.) | $0 (*Id.* ¶ 16.) | $439.06 (*Id.*) | $439.06 (*See id.* ¶¶ 10, 16.) |
| June 22, 2015 (*Id.* ¶ 10) | $439.06 (*Id.*) | $310.00 (*Id.* ¶ 22.) | $129.06 (*See id.*) | $568.12 (*See id.* ¶¶ 10, 16, 22.) |
| July 22, 2015 (*Id.* ¶ 10) | $439.06 (*Id.*) | $0 (*See id.* ¶¶ 22-30.) | $439.06 (*See id.*) | $1,007.18 (*See id.* ¶¶ 10, 16, 22-30.) |
| August 22, 2015 (*Id.* ¶ 10) | $439.06 (*Id.*) | $325.00 (*Id.* ¶¶ 25 – 26.) | $114.06 (*See id.*) | $1,121.24  (*See id.* ¶¶ 10, 16, 22-30.) |
| September 22, 2015 (*Id.* ¶ 10) | $439.06 (*Id.*) | $250.00 (*Id.* ¶ 30.) | $189.06 (*See id.*) | $1,310.30 (*See id.* ¶¶ 10, 16, 22-30.) |
| October 22, 2015 (*Id.* ¶ 10) | $439.06 (*Id.*) | $300.00 (*Id.* ¶ 33.) | $139.06 (*See id.*) | $1,449.36  (*See id.* ¶¶ 10, 16, 22-30, 33.) |

Therefore, after plaintiff made a payment of $525.00 on November 10, 2015 at 11:32 CST (but before her November 22, 2015 payment came due), she was still in default under the terms of the RISC by $924.36.  (*See id.* ¶¶ 10, 16, 22-30, 33, 39-40.)  As a result, GLS exercised its right to take possession of the motor vehicle collateral on November 10, 2015.

*Payments Made to Redeem the Vehicle and Reinstate the Account.* GLS permitted plaintiff to redeem her vehicle and reinstate her account by paying GLS $1,175.00. (*Id.* ¶ 56, 59.)

*GLS's Phone Conversations with Relatives.* Plaintiff alleges that GLS called plaintiff's son on or about October 13, 2015 and "told him that they needed a call from Ms. Moorer and they were looking for her car." (*Id.* ¶ 34.) She also alleges that GLS called plaintiff's sister on or about the same date and "spoke with her about Ms. Moorer's car, which GLS was looking for." (*Id.* ¶ 35.)

## I.   COURT MAY ACCEPT DOCUMENTS ATTACHED TO MOTION TO DISMISS WITHOUT CONVERTING IT TO A MOTION FOR SUMMARY JUDGMENT

Attached to this brief is a copy of the RISC into which plaintiff entered, a copy of the Notice GLS sent to Plaintiff, and a copy of Notice of Right to Cure and Notice of Repossession prepared and disseminated by the Wisconsin DFI and found on its website[3] (attached as Ex. C)jojo. This Court may accept these documents without converting this Motion to a Motion for Summary Judgment.

First, with regard to the RISC and the Notice sent by GLS, each document is referenced in the Amended Complaint by Plaintiff and is "central" to each of Plaintiff's claims against GLS. Each of plaintiff's claims against GLS is based on the allegation that a RISC between the parties existed, under which plaintiff failed to make payments as required, and which gave rise to the repossession. Moreover, each of plaintiff's claims against GLS are based on the allegation that GLS did not send a proper notice under the WCA and, therefore, did not have the right to repossess her vehicle. (Am. Compl. ¶¶ 28, 82, 86, 90, 95.) "[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and

---

[3]    The DFI form may be found on its website here: https://www.wdfi.org/wca/forms.htm.

are central to his claim." *Wright v. Associated Ins. Cos.,* 29 F.3d 1244, 1248 (7th Cir.1994); *see United States v. Wood,* 925 F.2d 1580, 1582 (7th Cir.1991).

WCA Wis. Stat §§ 425.104 and 425.205(1g) require a notice of the customer's right to cure a default under an consumer credit transaction between the parties and a notice regarding the creditor's right to repossess a vehicle for such default, respectively. Plaintiff refers to the Notice in her Amended Complaint and asserts that it was defective under Wisconsin law because it "did not properly items the amounts due, specifically the delinquency charges, as is required under § 425.104, Wis. Stats." and "did not meet the requirements of §§ 425.104 and 425.105, Wis. Stats. . . . ." (Am. Compl. ¶¶ 28-29.) Therefore, according to her, because the Notice did meet such requirements, GLS "had no present right to repossess Ms. Moorer's car at any time." (*Id.* ¶ 29.) Based on this conclusion, she asserts four claims against GLS. (*Id.* ¶¶ 82, 86, 90, 95.)

Accordingly, the RISC and the Notice, which are referenced in the Amended Complaint, are central to Plaintiff's claims, and therefore, are not documents "outside the pleadings" as contemplated by Fed. R. Civ. P. 12(d) and may be considered by the Court in this Motion to Dismiss without it being converted to a Motion for Summary Judgment.

The Court may also take judicial notice of the DFI form (Exhibit C, attached) without converting this Motion into one for summary judgment. *Menominee Indian Tribe of Wisconsin v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998). ("A court may consider judicially noticed documents without converting a motion to dismiss into a motion for summary judgment.") Courts have, pursuant to Fed. R. Evid. 201, often independently considered (*i.e.*, given judicial notice to) information from government agency websites, as such websites are publically available and the accuracy of the information found therein cannot reasonably be disputed. *See, e.g., Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003) (taking judicial notice of information

9

on the National Personnel Records Center, Military Personnel Records website and citing to another case in which it took judicial notice of information on the FDIC website); *Daniels–Hall v. National Education Association*, 629 F.3d 992, 999 (9th Cir.2010) (taking judicial notice of information made available on school district websites). Because the DFI form is published by a government agency and made available on that agency's website—as well as the State Law Library website[4]—this Court may properly take judicial notice of this form without converting this Motion into one for summary judgment.

## II.     The Notice was a Valid and Effective Notice, and Therefore, There Can Be No Argument That GLS Did Not Have the Right to Repossess the Vehicle.

Plaintiff alleges that the Notice of Right to Cure given on August 6, 2015 did not comply with Wis. Stat. §§ 425.104 or 425.105 (WCA sections requiring a notice of right to cure default to the customer) and, therefore, GLS "had no present right to repossess Ms. Moorer's car at any time." (Am. Compl. ¶ 29.) Specifically, plaintiff alleges that the Notice was ineffective because it failed to "properly itemize the amounts due, specifically the delinquency charges, as is required under § 425.104 . . . ." (*Id.* ¶ 28.) The Second Claim, the Third Claim, the Fourth Claim, and the Fifth Claim – all of the claims against GLS – rely on the notion that GLS had no right to the vehicle apparently because of the alleged failure to properly itemize the delinquency charges in the Notice. (*Id.* ¶¶ 82, 86, 90, 95.). The Notice, however, is in compliance with the statutory requirements of the WCA and the form authorized by the DFI, and these claims must be dismissed.

GLS properly itemized the amounts due, including the delinquency charges, in accordance with the WCA. Wisconsin Stat. § 425.104(2) of the WCA requires that a notice of

---

[4]     The DFI form may also be found on the website of the Wisconsin State Law Library here: http://wilawlibrary.gov/topics/transportation/vehicles/repossession.php.

10

right to cure contain, among other information, "a clear statement of the total payment, including an itemization of any delinquency charges" of the amount needed to cure the default. There is no claim that the Notice did not properly state the total amount due and owing in order for plaintiff to cure the default. The only claim is that the delinquency charges were not properly itemized.

The Notice, however, clearly sets forth the on a separately itemized line the total delinquency charges owed and necessary to be paid to cure the default. (Ex. B.) The statute does not require that each individual late charge be separately itemized; rather, it requires only that the "delinquency *charges*" be separately itemized. In conformance with the statutory language as well as the DFI approved form, all delinquency charges can be shown as one sum, as GLS has done. *See* Wis. Stat. § 425.104(2) (emphasis added); Ex. C. To put it another way, the statute does not require "an itemization of *each* delinquency charge" – if the Legislature had wanted an itemization of each delinquency charge, it could have written the statute to so state. The Legislature's failure to do so demonstrates that it did not intend for an individual itemization to be required.

GLS's form is consistent with (and, indeed, nearly mirrors) the form prescribed and disseminated by the Wisconsin Department of Financial Institutions ("DFI") – the agency in charge of promulgating, interpreting, and administering the WCA. (Compare Exhibit B to Exhibit C.) With regard to the total payment due and the itemization of the late charges, the GLS form tracks the DFI form. The portion of GLS's Notice setting forth the total payment due and itemizing the late charges is as follows:

(Ex. B.) The DFI portion of the form is as follows:

You may cure the default on or before *{insert date that is 15 calendar days from date of mailing}* by:

☐ Paying:

| | | |
|---|---|---|
| Late Payment (*insert due date*) | | $_____ |
| Late Payment (*insert due date*) | | $_____ |
| Late Payment (*insert due date*) | | $_____ |
| Delinquency Charge | | $_____ |
| _____ | | $_____ |
| | Total | $_____ |

(Ex. C.) The DFI form provides for three late payment lines but contains only one line for delinquency charges. GLS's Notice is consistent with the DFI approved form.

The DFI form is issued pursuant to DFI's authority under the WCA to issue written interpretations of and statements regarding the WCA. Wis. Stat. § 426.104(4)(a). Under Wis. Stat. § 426.104(4)(a), no provision of the WCA or law to which the WCA applies that imposes any penalty "shall apply to any act done or omitted to be done in conformity with . . . any written opinion, interpretation, or statement of the administrator, notwithstanding that such . . . opinion, interpretation or statement may, after such act or omission, be amended or rescinded or be determined by judicial or other authority to be held invalid for any reason."

The DFI interpreted Wis. Stat. § 425.104(2) to require only one separate line for all delinquency charges. Great weight must be given to DFI's interpretation as the agency designated to apply and enforce the WCA.

12

Because GLS's Notice is valid under the plain language of the statute, and is in conformity with the statute as interpreted by the DFI, the four claims asserted against GLS cannot stand as a matter of law.

Finally, Plaintiff's allegation that she had to receive the Notice for it to be effective is not what is required by the statute. GLS sent the Notice by certified mail. (Ex. A.) Under Wis. Stat. § 425.205(1g)(c), a creditor is "presumed to have given [the repossession] notice if the merchant sent the notice by certified or registered mail." Plaintiff cannot now, because she refused to accept the certified mail sent to her, use that as a reason to claim that the Notice did not comply with the provision of the WCA.

Plaintiff's argument that she can assert the claims she does on the basis that the Notice is not valid cannot stand, as a matter of law. The Notice was valid and GLS properly repossessed the vehicle. Therefore, the <u>Second Claim</u> and <u>Fourth Claim,</u> which rely entirely on the allegation that GLS did not have the right to the vehicle, must be dismissed outright. The <u>Third Claim</u> and <u>Fifth Claim</u>, which also rely in part on the allegation that the Notice was ineffective, must be dismissed for this reason and the additional reasons that follow.

## III.    GLS has a Valid Security Interest in the Vehicle and, Therefore, Had the Right to Repossess the Vehicle.

Moreover, regardless of whether the Notice was valid, the <u>Fourth Claim</u> asserting civil theft under Wis. Stat. §§ 943.20 and 895.445 fails entirely, and the <u>Third Claim</u> and the <u>Fifth Claim</u> fail insofar as they rely on the allegation that GLS had no right to repossess the vehicle, for the additional, independent reason that GLS had a valid right to enforce its security interest. (Ex. B.) That is, even assuming *arguendo* that the Notice was invalid, such failure does not mean that the right to enforce the security interest via repossession does not exist. That is, an allegedly

13

invalid notice does not automatically affect the validity of GLS's security interest and render it unenforceable or void.

At the time that GLS enforced its security interest and took possession of the vehicle, it was enforcing a valid security interest. Therefore, the enforcement of GLS's security interest was not an attempt to "enforce a right with knowledge or reason to know that the rights does not exist" as prohibited by Wis. Stat. § 427.104(1)(j) nor did it mean that GLS "took and carried away" the vehicle "without the lawful right to do so" as prohibited by Wis. Stat. §§ 943.20 and 895.446 nor did it mean that GLS committed conversion by taking the car "without lawful authority." To the contrary, the right to enforce a security interest exists until a court determines that it is invalid.

If an improper right to cure notice is sent before a repossession occurs, and an action is filed on that basis, a court may conclude that the notice was invalid under Wis. Stat. § 425.105. No specific remedy for failing to comply with Wis. Stat. § 425.105 is set in that section, and therefore the remedy found in Wis. Stat. § 425.302 is applicable. (See Wis. Stat. § 425.302(2), stating that the section "applies to all violations for which no other remedy is specifically provided.") The remedy under § 425.302 is a $25 penalty and actual damages, if proven, but does not permit a court to render any right (including the right to repossess) of the creditor void. The remedy under § 425.302 permits damages of $25 and actual damages; it does not render the enforcement of the security interest by a secured party to take possession of collateral that has already occurred void in any way.

GLS's security interest is valid until a court decides it is not valid. GLS had a right to enforce that security interest at the time of the repossession. At that time, the security interest was valid and GLS had a right to repossess the vehicle. Thus, there could be no violation of Wis.

14

Stat. § 427.104(1)(j), civil theft, or conversion as a matter of law. These claims must be dismissed.

**IV.    Wisconsin Stat. § 425.302 Provides the Remedy for Notices of Right to Cure Found to be Invalid under the WCA.**

Another independent reason for dismissal of plaintiff's <u>Third Claim</u> (in addition the fact that the security interest was valid when enforced) to the extent it asserts that, because the Notice was invalid under Wis. Stat. § 425.105, GLS was enforcing "a right with knowledge or reason to know that the right does not exist" is that the exclusive remedy for a violation of Wis. Stat. § 425.105 is set forth in Wis. Stat. § 425.302. As such, this section is the specific statute governing the available remedy for Plaintiff's claim of a violation of Wis. Stat. § 425.105. *See Rouse v. Theda Clark Med. Ctr., Inc.*, 2007 WI 87, ¶ 37, 302 Wis. 2d 358, 735 N.W.2d 30 (specific statute governs over a general statute applying to same subject).

Because the alleged violation under the WCA here is a repossession without giving a valid notice pursuant to Wis. Stat. § 425.104 and § 425.105, those statutes solely specify the recoverable remedy under the WCA. Plaintiff cannot allege the same conduct as a violation of the general debt collection statute, 427.104, because the specifically applicable statute controls over the general.

Finding a violation of section 425.105 entitles the customer to actual damages, if proven, and a $25 penalty under Wis. Stat. § 425.302. This is the specific remedy deemed by the Legislature to be appropriate for repossessions in violation of the WCA.

Accordingly, plaintiff cannot also recover for the same alleged conduct under the general debt collection statute, 427.104. For those violations, the Legislature awards merely statutory damages ranging from $100 to $1,000 and potentially actual damages, if proven. *See* Wis. Stat. § 427.105; Wis. Stat. § 425.304.

MIL-13310955-3

The Legislature specifically chose not to award a consumer a double recovery under Wis. Stat. § 425.105 and § 427.104 for repossessions undertaken allegedly without providing a valid of notice of right to cure default required by WCA. *See, e.g.*, *Assocs. Fin. Servs. Co. of Wisconsin v. Hornik*, 114 Wis. 2d 163, 171, 336 N.W.2d 395 (Ct. App. 1983) (rejecting argument consumer was entitled to a $1,000 penalty for each of the collection calls allegedly in violation of section 427.104; consumer was limited to a single penalty assessment for the action).

If the Legislature had intended to afford a customer a double recovery under §§ 425.105 and 427.104, it could have done so. Instead, these remedies are distinct. Notably, Wis. Stat. § 427.104 addresses a merchant's conduct regarding collateral under different circumstances: if a merchant induces a customer to voluntarily surrender collateral via conduct that violates chapter 427, Wis. Stat. § 427.105(2) provides that the customer is entitled to a judicial determination of the right to possession to the collateral pursuant to section 425.205(1)(e). And, if the customer prevails on the issue of right to possession (thus receiving a ruling customer is entitled to possession of the collateral), the customer may recover damages under chapter 427, as well as actual damages for the loss of use of the collateral (*i.e.*, during the time the collateral was out of the customer's possession). *See id.*

In contrast, the Legislature does not provide remedies under both §§ 425.105 and 427.104 for repossessions not compliant with Wis. Stat. § 425.105. Section 425.105, the specific statute, provides for the remedy prescribed by Wis. Stat. § 425.302.

## V.     GLS Has Not Engaged in Threatening or Harassing Conduct Against Plaintiff or Anyone Related to Her.

There are two alleged bases for Plaintiff's <u>Third Claim</u>. The first basis is that GLS violated Wis. Stat. § 427.104(1)(j) because it enforced a "right with knowledge or reason to know that the right does not exist." (Am. Compl. ¶ 86.) This basis fails for the reasons set forth

16

above. The second basis is that GLS violated Wis. Stat. § 427.104(1)(h) because it "engaged in other conduct which can reasonably be expected to threaten, or harass the customer or person related to the customer" when allegedly GLS called plaintiff's sister by phone and one time when it called plaintiff's son by phone. (*Id.*) This basis fails because, as a matter of law, plaintiff fails to allege any threatening or harassing "other conduct" that violates Wis. Stat. § 427.104(1)(h).

The subsection immediately preceding Wis. Stat. § 427.104(1)(h) – Wis. Stat. § 427.104(1)(g)) – expressly prohibits "communicat[ing] with the customer or a person related to the customer with such frequency or at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer." Plaintiff does not allege that GLS violated this provision. Presumably she does not do so because the facts she alleges could not support such a claim, given that the Amended Complaint asserts only two total phone calls to (*i.e.* communication with) "person[s] related" to her.

Rather, plaintiff cites the provision immediately subsequent, which prohibits a creditor from "engag[ing] in **other conduct** which can reasonably be expected to threaten, or harass the customer or person related to the customer." Wis. Stat. § 427.104(1)(h)(emphasis added). In applying a statute, a court must give effect to each and every word, clause, and sentence in the statute. *Columbia County v. Bylewski*, 94 Wis. 2d 153, 164, 288 N.W.2d 129 (1980). The Court must give effect to every word of the statute, to avoid surplusage and to avoid absurd results. *Brunton v. Nuvell Credit Corp.*, 2010 WI 50, ¶ 16, 325 Wis. 2d 135, 785 N.W.2d 302. Interpreting the statute accordingly, which this Court must do, "other conduct" must mean something other than a communication with (*e.g.*, telephone call to) the customer or a person related to the customer.

Even if "other conduct" could somehow be construed to also mean communication, the phone calls are not conduct that can "reasonably be expected" to threaten or harass either the recipient of the call or plaintiff. GLS allegedly made one phone call to her sister and one phone call to her son. (Am. Compl. ¶¶ 34-35.) In those phone calls, GLS supposedly made reference to the vehicle and, at least in one of the calls, stated that it was looking for the vehicle. (*Id.*) There are no allegations, however, that the recipients of the phone calls felt threatened or harassed or even asked GLS not to call them again. Moreover, there is no allegation that plaintiff even knew about the calls such that she could feel harassed by virtue of them.

Accordingly, the Third Claim fails in its entirety and must be dismissed as a matter of law.

## VI. GLS Permitted Plaintiff to Reinstate Her Account and Redeem Her Vehicle for Much Less Than GLS Was Authorized to Do Under the WCA.

As with her Third Claim, there are two alleged bases for Plaintiff's Fifth Claim. The first basis is that GLS took plaintiff's car "without her consent and without lawful authority." (Am. Compl. ¶ 95.) For the reasons cited above, this fails as a basis to sustain the Fifth Claim. The second basis for the claim is that GLS "intentionally took money from plaintiff to which it was not legally entitled, above the amount that plaintiff was required to pay to get her car returned." (*Id.* ¶ 94.) This basis fails because GLS charged plaintiff much less than it could have under WCA Wis. Stat. § 425.208 to reinstate her account and redeem her vehicle.

Wisconsin Stat. § 425.208 states that, "for a period of 15 days following exercise by the creditor of nonjudicial enforcement rights . . . the customer shall be entitled to redeem the goods by tendering: (a) The total of all unpaid amounts, including any unpaid delinquency . . . due at the time of tender, without acceleration; **plus** [reasonable] expenses [of taking and holding the collateral that] the creditor is entitled to recover under s. 422.413 (2g) (a) and (b); **plus** (d)

18

[w]hichever of the following is less:1. A performance deposit, in the amount of 3 scheduled installments, or minimum payments in the case of an open-end credit plan. 2. One-third of the total obligation remaining unpaid with respect to the consumer credit transaction."

Immediately after the repossession, according to figures set forth by plaintiff in her Amended Complaint, the amount of past due payments owed by plaintiff was $924.36. (*See* Am. Compl. ¶¶ 10, 16, 22-30, 33, 39-40; Statement of Facts, above.)   At a minimum, excluding repossession fees that GLS is entitled to recover under the law (plaintiff does not allege that, of the amount charged by GLS to reinstate, any was for the repossession and so these fees will not be addressed in this brief), GLS was permitted to require the past due payment amount of $924.36 plus either an amount equal to three scheduled monthly payments or one-third of the total obligation remaining unpaid, whichever was less. *See* Wis. Stat. § 425.208(1).  By the time plaintiff defaulted on her loan, as she has alleged, she had made not even one year's worth of payments and had at least 36 more months' worth of payments coming due under the RISC.  (*Id.* ¶ 14.) Accordingly, the lesser amount for a performance deposit was three scheduled monthly payments.  Under the RISC, this would be equal to an amount of $439.06 times three, or $1,317.18.  (Ex. A; Am. Compl. ¶ 10.) Therefore, at a minimum, GLS was permitted to charge plaintiff  $2,241.54 (past due amount of $924.36 plus $1,317.18 for a performance deposit) to redeem her vehicle and reinstate her account.

Instead, plaintiff alleges that GLS required her to pay $1,175.00 to get her vehicle back and reinstate her account. (Am. Compl. ¶¶ 55-56, 59-60.) This is more than $1,000 less than what GLS could have required her to pay pursuant to Wis. Stat. § 425.208. Therefore, GLS was legally entitled to the amounts that it required plaintiff to pay and the second basis asserted for plaintiff's <u>Fifth Claim</u> fails.  As a matter of law, the <u>Fifth Claim</u> must be dismissed.

19

## CONCLUSION

The claims against GLS must be dismissed as a matter of law. The <u>Second Claim</u> and the <u>Fourth Claim</u> fail outright because GLS had the right to repossess the vehicle. The <u>Third Claim</u> and the <u>Fifth Claim</u> in part assert as a basis for the claims the allegation that GLS did not have the right to repossess the vehicle. On this basis, as with the <u>Second Claim</u> and <u>Fourth Claim</u>, these claims also fail because Notice GLS sent to plaintiff was valid and effective and GLS had the right to repossess the vehicle. This basis for the <u>Third Claim</u> fails for the additional, independent reason that plaintiff cannot seek a recovery under Wis. Stat. § 425.302 and Wis. Stat. § 427.105 for the same conduct.

The additional basis for the <u>Third Claim</u>, that telephone calls to plaintiff's sister and son constituted "other conduct" that was reasonably expected to harass and threaten, cannot stand either because there is no "other conduct" meeting the requirements of this provision that give rise to such a claim. Even if there were "other conduct", it does not rise to the level of conduct reasonably expected to harass or threaten. Therefore, the <u>Third Claim</u> must fail in its entirety, as a matter of law.

The <u>Fifth Claim</u>, in addition to stating that GLS committed conversion because it did not have the right to repossess the vehicle, also alleges that GLS charged plaintiff more than it was legally entitled to for plaintiff to redeem the vehicle and reinstate the account. GLS charged much less than what was permitted to charge by law, and therefore, this cannot stand as a valid basis for the <u>Fifth Claim</u>. Therefore, the <u>Fifth Claim</u> in its entirety should also be dismissed.

MIL-13310955-3

Dated this 24th day of February, 2017.

Attorneys for Global Lending Services, LLC
HUSCH BLACKWELL LLP

*s/ Marci V. Kawski*

Marci V. Kawski
State Bar No. 1075451
Edward J. Heiser, Jr.
State Bar No. 1012427
Lisa M. Lawless
State Bar No. 1021749
33 East Main Street, Suite 300
P.O. Box 1379
Madison, Wisconsin 53701-1379
Telephone:  608-255-4440
Fax:  608-258-7138
Email: Marci.Kawski@huschblackwell.com
Email: Edward.Heiser@huschblackwell.com
Email: Lisa.Lawless@huschblackwell.com